# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
# BID PROTEST

| | | |
|---|---|---|
| **CWT/ALEXANDER TRAVEL, LTD,**<br>**and**<br>**CWT/EL SOL TRAVEL, INC.,**<br>**Plaintiffs,**<br>**v.**<br>**THE UNITED STATES,**<br>**Defendant.** | ) | **Case No. 07-612**<br>**Judge Nancy B. Firestone** |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

Lars E. Anderson
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, Virginia 22182
(703) 760-1600 (Telephone)
(703) 821-8949 (Facsimile)
*Attorney of Record*

*Of Counsel:*

Peter A. Riesen
Keir X. Bancroft
Patrick R. Quigley
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, Virginia 22182
(703) 760-1600 (Telephone)
(703) 821-8949 (Facsimile)

## TABLE OF CONTENTS

I. STATEMENT OF THE ISSUE ........................................ 2
II. BACKGROUND ........................................ 3
III. ARGUMENT ........................................ 4
A. Standard of Review ........................................ 4
B. Specific Discovery Requested to Complete the Administrative Record ........................................ 6
IV. CONCLUSION ........................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States*, 56 Fed. Cl. 502 (2003) ........ 4, 5
*Comprehensive Health Servs., Inc. v. United States*, 70 Fed. Cl. 700 (2006) ........ 5
*Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 345 (1997) ........ 5
*Emerald Coast Finest Produce Co. v. United States*, 76 Fed. Cl. 445 (2007) ........ 4
*GraphicData, L.L.C. v. United States*, 37 Fed. Cl. 771 (1997) ........ 5
*Orion Int'l Techs. v. United States*, 60 Fed. Cl. 338 (2004) ........ 4
*Tech Sys., Inc. v. United States*, 50 Fed. Cl. 216 (2001) ........ 4

**GAO Decisions**

*HG Props. A, LP*, B-290416, July 25, 2002, 2002 CPD ¶ 128 ........ 5
*New Beginnings Treatment Ctr., Inc.--Recon.*, B-252517.5, Apr. 11, 1994, 94-1 CPD ¶ 242 ........ 6

**Rules**

4 C.F.R. §21.3(m)(1) (2002) ........ 6

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
# BID PROTEST

| | |
|---|---|
| **CWT/ALEXANDER TRAVEL, LTD,**<br><br>**and**<br><br>**CWT/EL SOL TRAVEL, INC.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>**Defendant.** | **Case No. 07-612**<br>**Judge Nancy B. Firestone** |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

Plaintiffs CWT/Alexander Travel, LTD ("Alexander Travel") and CWT/El Sol Travel, Inc. ("El Sol") have moved in the accompanying Motion to include in the Administrative Record information regarding United States Air Force Solicitation W91QUZ-04-0003, under which AirTrak, WingGate, and Alamo were awarded contracts by the United States Army (the "Army," the "Agency," or the "Government") of several Government travel service contracts, as described below:

(a) Contract W91QUZ-05-C-0005 issued to AirTrak Travel Systems, Inc. (the "AirTrak contract"),

(b) Contract W91QUZ-05-C-0006 issued to WingGate Travel for Travel Area 101 (the "WingGate 101 contract"),

(c) Contract W91QUZ-05-C-0007 issued to The Alamo Travel Group for Travel Area 102 (the "Alamo 102 contract"),

(d) Contract W91QUZ-05-C-0009 issued to The Alamo Travel Group for Travel Area 104 (the "Alamo 104 contract"), and

(e) Contract W91QUZ-05-C-0010 issued to WingGate Travel for Travel Area 105 (the "WingGate 105 contract").

Additionally, Plaintiffs have moved to include in the Administrative Record information regarding the administration of contracts awarded to AirTrak, WingGate, and Alamo under United States Air Force Solicitation W91QUZ-04-0003.

## I. STATEMENT OF THE ISSUE

The Administrative Record submitted by the Government in this matter is inadequate and incomplete. Although the Government has provided several thousand pages of discovery in its initial Administrative Record filing, the Government improperly restricted the Administrative Record to documents relating to the initial solicitation and awards of the contracts. Plaintiffs, however, do not dispute the decisions to award the contracts in 2005. Rather, Plaintiffs ***do*** dispute the Government's actions since those awards.

The basis of the protest is that (a) delaying the commencement of firm two-year contracts with three one-year options by two and one-half years is a cardinal change or, alternatively, (b) commencing what are effectively five-year contracts two and one-half years after the negotiations on price and performance terms is essentially the procurement of new sole-source contracts in violation of the Competition in Contracting Act. While this case is brought as a bid protest, the key issues in dispute involve cardinal changes to the scope of the disputed contracts, and the adjudication of cardinal change protests implicates questions of contract administration and, thus, necessarily broadens the universe of relevant documents that should form part of the Administrative Record. For the parties, and the Court, to arrive at an understanding of whether the delays and consequences were within the scope of the contracts, Plaintiffs must have access

to sufficient information regarding the mutual understandings of the awardees and the Government during the period of the delays and, for that reason, the Court should grant Plaintiffs' request to enlarge the Administrative Record.

## II. BACKGROUND

On February 13, 2004, the Army issued as a small business set-aside Solicitation Number W91QUZ-04-R-0007 (the "Solicitation") for travel management services at various Military Entrance Processing Stations ("MEPS"), the stations at which military recruits joining the military first report and are sent in groups to military bases to begin basic training. A significant number of offerors submitted proposals for each of six solicited MEPS regions for contracts with a two-year base period and three one-year options. The contracts were to start on April 1, 2005, and expire no later than March 31, 2010.

In early 2005, one contract, W91QUZ-05-C-0005 (Travel Area 100), was awarded to AirTrak; two contracts, W91QUZ-05-C-0005 and W91QUZ-05-C-0010 (Travel Areas 101 and 105) were awarded to WingGate; and two contracts, W91QUZ-05-C-0007 and W91QUZ-05-C-0009 (Travel Areas 102 and 104) were awarded to Alamo. The five contracts awarded to AirTrak, WingGate, and Alamo are now scheduled to commence on October 1, 2007, and to run for the original period of a two-year base period and three one-year options. Contracts that were originally solicited in 2004 are now, three years later, scheduled to start performance with pricing so outdated as to lack attachment to market realities.

The Solicitation and resulting contracts are not based on the Army's actual needs with regard to the time period for contract performance, workload requirements, or pricing. Because the Government's needs have changed so fundamentally, the Government has, essentially, unlawfully sole-sourced multiple contracts without maximizing competition among other

offerors. Alternatively, because of the magnitude of the changes in requirements since the time the contracts were awarded, the awardees are proceeding with performance on contracts that are subject to cardinal changes that mandate re-competition. In either event, the awardees must not be allowed to proceed with performance, and the Army's current requirements for MEPS travel services must be competitively procured.

## III. ARGUMENT

### *A. Standard of Review*

"[E]vidence in cases challenging *formal* agency rulemaking brought under the Administrative Procedure Act ("APA") is limited to materials contained in the administrative record." *Orion Int'l Techs. v. United States*, 60 Fed. Cl. 338, 342 (2004) (emphasis in original). In the bid protest context, it is generally the case that the "the court focuses its review on 'the administrative record already in existence.'" *Emerald Coast Finest Produce Co. v. United States*, 76 Fed. Cl. 445, 448 (2007) (quoting *Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States*, 56 Fed. Cl. 502, 508 (2003)). However, the "record produced during a formal adjudication or rulemaking . . . is different from a record of an informal agency decision," such as a bid protest. *Orion Int'l Techs.*, 60 Fed. Cl. at 342. "In the case of an informal administrative decision, such as the award of a contract, the administrative record is merely a 'convenient vehicle for bringing the decision of an administrative body before a reviewing agency or a court.'" *Id.* (quoting *Tech Sys., Inc. v. United States*, 50 Fed. Cl. 216, 222 (2001)). In fact, this Court has provided that:

> As a practical matter, . . . in most bid protests, the "administrative record" is something of a fiction, and certainly cannot be viewed as rigidly as if the agency had made an adjudicative decision on a formal record that is then certified for court review. This is true in the contract award context if for no other reason than that, due to the absence of a formal record, the agency has to exercise some

> judgment in furnishing the court with the relevant documents. In order to preserve a meaningful judicial review, the parties must be able to suggest the need for other evidence, and possibly limited discovery.

*Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 345, 350 (1997). "Accordingly, the Court of Federal Claims does not 'apply an iron-clad rule automatically limiting its review to the administrative record.'" *Al Ghanim*, 56 Fed. Cl. at 508 (citation omitted); *GraphicData, L.L.C. v. United States*, 37 Fed. Cl. 771, 780 (1997) (stating that "a judge confronted with a bid protest case should not view the administrative record as a[n] immutable boundary that defines the scope of the case.").

The United States Court of Federal Claims has "identified the threshold inquiry [regarding supplementation of the administrative record] as whether an agency's action before the court is susceptible to a 'record review.'" *Comprehensive Health Servs., Inc. v. United States*, 70 Fed. Cl. 700, 720 (2006) (citations omitted). Thus, "a party may supplement the administrative record when necessary to prove that evidence not in the record is evidence without which the court cannot fully understand the issues." *Al Ghanim*, 56 Fed. Cl. at 508.

It is exactly to help the Court, and the parties, understand the issues that enlargement of the record is necessary. Despite Plaintiffs' request for a broader Administrative Record, the Government has only turned over documents dealing with the original award decision, which is not now in dispute. Rather, the fact that this case involves a question of contract administration that constitutes a cardinal change and violations of CICA is what requires the broader production. The Government Accountability Office, in fact, generally will not consider protests challenging contract modifications, except for cardinal change protests, because modifying a contract involves the ***administration*** of the contract, which is outside their bid protest jurisdiction. *HG Props. A, LP*, B-290416, July 25, 2002, CPD ¶ 128 at 3 (citing 4 C.F.R.

§21.3(m)(1) (2002), *New Beginnings Treatment Ctr., Inc.--Recon.*, B-252517.5, Apr. 11, 1994, 94-1 CPD ¶ 242) (emphasis added)). Since this case involves questions of contract administration, it is crucial that the Government produce all responsive documents concerning that administration.

***B. Specific Discovery Requested to Complete the Administrative Record***

The deficiencies in the record fall into two broad categories: (1) information relating to decision-making and communications regarding the administration of the five disputed Army MEPS travel contracts discussed *supra*, and (2) information relating to communications concerning the administration of a companion U.S. Air Force travel services procurement that had contractual provisions regarding equitable adjustment of prices that are identical to those in the MEPS contracts. The information requested is specific and limited, and its production would impose only a comparatively minor burden on the Government.

The Administrative Record filed by the Government failed to include obviously relevant documents and records of communications both internal to the Government and between the Government and the contractors. The Administrative Record fails to address the protest issues in that it does not disclose the changes occurring since the contract award date in 2005 that would impact the performance of the contracts. The Administrative Record utterly fails to address the Government's decision-making process and/or justifications related to commencing performance of these contracts on October 1, 2007, rather than April 1, 2005. There is no evidence in the Administrative Record of any consideration as to changes in any requirements or factors impacting performance or cost as a consequence of delaying the start of the contracts and/or extending the total contract period by two and one-half years. Additionally, while the Government has provided a spreadsheet with pricing information, the Administrative Record

continues to appear not to disclose all costs or potential costs included in offerors' pricing that was submitted in November 2004, a particularly relevant piece of information considering that there have been numerous recent price increases on Air Force contracts. There is also nothing in the Administrative Record that explains or justifies why it is proper to negotiate on a sole source basis with AirTrak, WingGate, and Alamo to commence travel service contracts on October 1, 2007 and extending through September 30, 2012.

Moreover, the Administrative Record contains no record of internal Government communications, memoranda, determinations, justifications, or other documents or communications with the contractors since the award of the contracts, other than a few executed Contract Modifications. Delaying the commencement of a firm two-year contract by two and one-half years obviously has an impact on performance and costs, yet there is no indication in the record that the Government considered or evaluated such matters, or that there was any communication between the Government and representatives of the contractors. All the contracts were modified in 2006 to include new Price Adjustment provisions to reflect increases in Service Contract Act wage determinations, and all contract modifications changing the contract period were bilateral modifications. It defies credibility to believe that there were no internal deliberations within the Government and communications with the contractors related to such contract modifications.

It was known to the Army quite some time ago that there could not be a change in contractors providing travel services to these MEPS sites prior to October 1, 2007, at the earliest. However, there is no evidence in the Administrative Record of any consideration as to whether the contracts at issue should be terminated and new competitive procurements conducted based

upon current, actual requirements. It defies credibility to suggest that the Government never considered such a course of action to comply with CICA.

It is essential that the Government produce all documents, including e-mails, that reflect Governmental deliberations, evaluations, determinations, justifications, or internal communications or any negotiation or other communications with representatives of the contractors related to:

(a) The commencement/delay in start of performance under these contracts on October 1, 2007, or the extension of the contract periods beyond March 31, 2010;

(b) Any change in the workload data/requirements at any MEPS site that was provided with the 2004 Solicitation;

(c) Any additional pending or proposed price adjustments or the pricing that would be effective for each contract year commencing on October 1, 2007;

(d) Any additional pending or proposed equitable adjustment of any other contract provision;

(e) Any change in personnel or staffing or other resources or location of reservation centers from the proposals submitted in November 2004; and

(f) Any potential contract modifications considered or discussed but not yet executed.

The Defense Travel System (the "DTS") is a web-based, electronic travel system that allows Government travelers to make all their travel arrangements without the assistance of a travel agent. Essentially, under the DTS, the travel agent will merely purchase the tickets for the reservations made by the Government traveler. In 2004, it was not expected that the DTS would be able to arrange travel for the MEPS because 95% of MEPS travel is done by groups of enlistees and, at that time, the DTS could not handle group travel. Therefore, no pricing was required for DTS travel transactions under the MEPS Solicitation. However, there have now been another three years of extensive development in the DTS, and DTS is far more capable now than it was in 2004.

A pending DoD Solicitation for Worldwide Travel Services, W91QUZ-06-R-0051, required offerors to submit proposals on July 23, 2007, and provide pricing for five years (including option periods) commencing on October 1, 2007. That Solicitation provides that, due to the improvements made in the DTS, offerors should assume that by the third year, at least 50% of all DoD travel transactions will be performed via DTS, without travel agent assistance. If the DTS will be capable of providing travel service to the MEPS in a similar time frame, then that factor alone is clearly a cardinal change in the current MEPS contracts, which assumed 100% usage of only traditional travel services for all five years. Accordingly, the Government should be required to provide the current plans for adding the capability to the DTS to handle group travel, such as that required for MEPS.

Regarding the Army contracts, Plaintiffs have limited their requests to communications or documents, including e-mail correspondence since the date of award, both within the Government and between the Government and the three specified awardees, that relate to the administration of the contracts. It is reasonable to suppose that, since the awardees have not yet started to perform the contracts, the volume of such materials is likely limited and easy to retrieve and, therefore, their production would impose no unreasonable burden on the Government.

In addition, Plaintiffs have come to understand that the awardees of the Army MEPS contracts have already taken advantage of the equitable adjustment provisions in their companion Air Force travel contracts — language that mirrors the provisions of the Army MEPS contracts — and have substantially raised their prices in those contracts. Therefore, the Air Force travel contracts would be crucial for the parties, and the Court, to understand how out-of-date and unreliable the awardees' three-year-old prices are on the Army MEPS contracts and how much

of a change the Government would work to the scope of performance by allowing the performance to commence 30 months late. For that reason, Plaintiffs have requested all communications between the Government and AirTrak, Alamo, or WingGate regarding proposed or actual equitable adjustments to prices, or proposed or executed contract modifications under contracts awarded in early 2005 to provide travel service to various Air Force bases under Solicitation W91QUZ-04-0003. Once again, this request is narrowly tailored to avoid imposing unreasonable obligations on the Government while producing information critical to the resolution of this case.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant its Motion to Enlarge the Administrative Record to provide the basic documents necessary to complete the Administrative Record. Such crucial contract administration information represents the minimum record that the Court and the parties will need to resolve this case. Once the Government provides a complete Administrative Record of all relevant existing documents, including e-mail, then the Protesters and the Court may address a need to supplement the Administrative Record with testimony.

Dated: August 31, 2007

Respectfully submitted,

/s/ Lars E. Anderson
Lars E. Anderson
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, Virginia 22182
(703) 760-1600 (Telephone)
(703) 821-8949 (Facsimile)
*Attorney of Record*

*Of Counsel:*

Peter A. Riesen
Keir X. Bancroft
Patrick R. Quigley
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, Virginia 22182
(703) 760-1600 (Telephone)
(703) 821-8949 (Facsimile)